ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
DEC 21 2010
CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JOHN RAY SAIN, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:10-CV-314-Y |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

#### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

#### B. PARTIES

Petitioner John Ray Sain, TDCJ-ID #01373168, is a state prisoner confined in the Texas Department of Criminal Justice, Correctional Institutions Division.

Respondent Rick Thaler is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

## C. Factual and Procedural History

On May 30, 2006, a jury found petitioner guilty of murdering his wife, Elena Sain, in the Criminal District Court Number One of Tarrant County, Texas, Case No. 0985831D. (Clerk's R. at 192) Sain appealed his conviction, but the Second District Court of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. *Sain v. State*, No. 02-06-184-CR, slip op., 2007 WL 4462599 (Tex. App.–Fort Worth Dec. 20, 2007) (not designated for publication); *Sain v. State*, PDR No. 0120-08. Petitioner also filed a state habeas application challenging his conviction, which was denied by the Texas Court of Criminal Appeals without a hearing on the findings of the trial court. *Ex parte Sain*, Appl. No. WR-73,680-01.

The Second District Court of Appeals of Texas summarized the evidence at trial as follows:

> Petitioner had physically abused Elena in the week before her death. Elena told several witnesses that [petitioner] had abused her, and she indicated to one that she was afraid [petitioner] would kill her. Four witnesses saw bruises or abrasions on Elena's body in the days before her death, and the medical examiner found bruises on Elena's arm that were several days old. Further, Elena claimed that [petitioner] had abused her two dogs, which were trained and licensed to detect her seizures.
>
> In the days leading up to her death, Elena was in the process of leaving [petitioner]. Officer Mike Lilly responded to a domestic disturbance at the Sains' house on November 12 when [petitioner] locked Elena out of the house. Officer Lilly advised Elena to find another place to stay and to speak to an attorney. On November 14, one day before her murder, Elena left the house with her dogs, and a friend, Karen LaBarre, helped her cash her paycheck and check into a motel. Also on November 14, Valerie Shepard, a manager of an apartment complex, showed Elena an apartment. Elena told Shepard she needed something right away and was most concerned with safety features such as the apartment's alarm system, access gate, and courtesy officer because she was leaving an abusive situation. Elena arranged to pick up the keys to the apartment on November 15. Elena returned to her house on November 15 only to pick up some of her belongings while her husband, she thought, was away. On the morning of the murder, [petitioner] appeared to be away from home. Elena knew that [petitioner] had registered and paid for an all-day

2

gun show that day. She had also searched for, but had not found, [petitioner]'s car in the driveway and surrounding neighborhood. Finally, Elena had circled the house on foot for approximately fifteen to twenty minutes, knocking on windows, looking through the blinds, trying to open the garage door with the electronic keypad, and unsuccessfully trying her key at the front door. Elena told her neighbor, LaBarre, and Officer Lilly that she knew [petitioner] was not home. Further, the jury heard a 911 call that Elena made before entering the house, in which she told the operator that her husband was not home and she was going to break a window to enter the house because her husband had changed the locks and put something on the garage door that prevented it from opening. Elena, therefore, removed a screen from a window, used a metal boot brush and shovel to break the window, pushed aside the curtains, and began to enter the house.

[Petitioner] testified in his own defense. He claimed that on the morning of November 15 the sound of the bedroom window breaking woke him from his sleep, and he saw a figure advancing from behind the blinds and curtains that hung from the window. There was evidence that with the blinds and curtains in place and lights off, the bedroom was dark, even during the day. [Petitioner] testified that he thought the intruder would have a gun, although he did not see one, and that he had no way to exit the bedroom. Therefore, he fired two shots at the intruder in self-defense. Neighbors Beth and Jason Glavin, however, both testified that there was an approximately twenty- or thirty-second delay between the time Elena entered the house through the window and the moment that they heard the first shot. Further, the 911 operator called [petitioner]'s home phone but received no response, and [petitioner] returned the call on his cell phone at 9:35 a.m., suggesting that he was in fact awake before the break-in.

[Petitioner] also knew that Elena had threatened to break a window to enter their home in the past. During his testimony, [petitioner] acknowledged that he had locked Elena out of the house on November 12 and that she had threatened to break a window or door to reenter. [Petitioner] also admitted that although Elena left unexpectedly with her dogs on November 14, he expected her to come home on the day she was killed.

[Petitioner] claimed that he did not pretend to be away from home. He explained that on the morning of the murder, he dropped his car off at his parents' house and picked up his son's car because he planned to do work on it. Upon returning to his house, he parked his son's car approximately two houses away from his house-rather than in the driveway, his usual spot, even though he had some trouble walking-because he planned to spray weedkiller and did not want it to get on the car. The car was left within sight of the house, and petitioner maintained that

3

Elena was familiar with the vehicle. Further, [petitioner] claimed he last changed the locks to the house after the couple's argument on November 12 but had given Elena a copy of the new keys when they reconciled later that night, and the defense investigator testified that keys found on Elena's body after her death did open some of the doors of the house. [Petitioner] claimed that he did not put anything on the garage door to prevent it from opening.

During his testimony, petitioner also denied abusing Elena or the dogs. Petitioner claimed that Elena received bruises from breaking up a fight between the dogs. Officer Lilly admitted that, although Elena expressed fear for the dogs' safety with petitioner on November 12, she later conceded that petitioner had not hurt the dogs in the past. Officer Lilly did not see injuries on Elena or the dogs on November 12.

The ballistics evidence was consistent with both the State's and petitioner's theories. Officer Brad Patterson, who processed the crime scene, concluded that petitioner shot from the foot of the bed. The State's ballistics expert, however, indicated on cross-examination that gunshot residue, holes and tears in the bed linens, and a nick on the bedpost were consistent with petitioner's claim that he fired the shots from a kneeling position at the head of the bed. The defense investigator, a former police officer, indicated that shooting from such a position could be consistent with either a "defensive posture" or an ambush.

The jury also heard evidence that petitioner was not upset by his wife's death. After the shooting, neighbor Jason Glavin ran over to petitioner's house. Jason testified that petitioner did not have "much reaction," was not emotional, and did not attempt to aid Elena. Jason also saw petitioner laughing while seated in the backseat of a police car. Officer Lilly testified that petitioner did not appear to be in shock but rather seemed "matter of fact about the circumstance." The officer also stated, however, that petitioner was excited, talking very fast, and red in the face. Petitioner admitted that he did not try to help Elena, but he did call 911 and thought that he might have been in shock at the time. The State also showed the jury a personal ad that petitioner placed on the website "bride.ru" in January 2004, less than two months after Elena's death. Petitioner testified that he was sorry that he had killed his wife and that the personal ad was suggested by a counseling group he attended.

*Sain*, 2007 WL 4462599, at *2-3.

## D. ISSUES

In this petition, Sain raises the following grounds for relief:

(1) His constitutional rights to due process and confrontation were violated by admission of hearsay statements made by the victim to Karen LaBarre, Valerie Shepard, and Vernette Langon (grounds one, two, and three); and

(2) The trial court erred by subjecting the jury panel to external influences in the community and failing to properly instruct the jury to avoid them. (Pet. at 7 & Insert to Pet.)

## E. RULE 5 STATEMENT

Respondent believes that petitioner has sufficiently exhausted his state remedies as to the issues presented and reserves the defense, and any related procedural default defense, pending disposition of petitioner's claims. (Resp't Answer at 6) 28 U.S.C. § 2254(b)-(c).

## F. DISCUSSION

### *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it

5

correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The Act further requires that federal courts give great deference to a state court's factual findings. *See Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). When the Texas Court of Criminal Appeals denies relief without written order, it is an adjudication on the merits, which is entitled to this presumption. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

### *1. Right to Due Process and Confrontation*

In grounds one through three, petitioner claims his constitutional rights to due process, confrontation and cross-examination were violated by admission of hearsay testimony from Karen LaBarre, Valerie Shepard, and Vernette Langon regarding statements made to them by the victim that "did not fit into any accepted hearsay exceptions or recognized admissible hearsay."[1] (Pet. at 7; Pet'r Mem. in Support at 1-21) Relying on *Crawford v. Washington*, 541 U.S. 36 (2004), *Davis v. Washington*, 547 U.S. 813 (2006), and relevant state law, the state appellate court addressed these claims as follows:

> The trial court held a hearing outside the presence of the jury on the admissibility of the hearsay statements. The State proffered LaBarre's testimony on statements that Elena made on November 12, 14, and 15. The trial court sustained [petitioner]'s objections to the November 12 and 14 statements, and LaBarre did not

---

[1] Petitioner's claim that the out-of-court statements "did not fit into any accepted hearsay exceptions or recognized admissible hearsay" was not addressed by the appellate court because the claim was inadequately brief. *Sain*, 2007 WL 4462599, at *5 n.37. For the same reason, the claim is not addressed herein.

6

testify to those statements. The trial court then summarized the November 15 statements as concerning Elena's return to the house to get her things and the reasons why Elena thought appellant was not home. [Petitioner] did not object to that testimony either during the hearing or in front of the jury.[FN35] [Petitioner], therefore, has forfeited his right to complain of Elena's statements to LaBarre.

> FN35. Appellant did object based on hearsay to the first phone call that Elena made to LaBarre around 8:30 a.m. on November 15 and to a question of whether Elena followed through on a promise she made to LaBarre not to enter the house without the police. Both of these objections were sustained, and LaBarre did not answer those two questions.

The State also proffered Elena's statements to Valerie Shepard. The trial court summarized Shepard's testimony as addressing three issues: security measures in the apartment, abuse of Elena and the dogs, and Elena's fear that [petitioner] would kill her. [Petitioner] did not object to testimony regarding security measures, but he did object to the rest of Shepard's proffered testimony.[FN37] The trial court overruled [petitioner]'s objections, and petitioner obtained a running objection.

> FN37. In the trial court, [petitioner] objected to these three witnesses' testimony based on "hearsay, relevance, doesn't go to state of mind, violation of confrontation cross-examination and a 403 objection." On appeal, however, he contends only that his "constitutional rights to confrontation and cross-examination" were violated by the hearsay statements. [Petitioner] also mentions in passing that "there is not even a recognized exception to the hearsay rules" and that the testimony establishing prior abuse was "extraneous and prejudicial." Because he does not cite relevant case law to support his arguments, if any, based on hearsay and Rule 403, we do not address these grounds.

In *Crawford v. Washington,* the Supreme Court held that the admission of a hearsay statement made by a nontestifying declarant violates the Sixth Amendment if the statement was testimonial and the defendant lacked a prior opportunity for cross-examination, even if the statement falls under a hearsay exception. The Supreme Court declined to spell out a comprehensive definition of testimonial, but it stated that the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." In *Wall v. State,* the Texas Court of Criminal Appeals concluded that the testimonial character of a statement is determined by a reasonable, similarly situated declarant's

7

ability to appreciate the legal ramifications of his statement. We review the question of whether a statement is testimonial or nontestimonial de novo.

Shepard, an assistant property manager at an apartment complex, met Elena and showed her an apartment on the day before her death. Shepard's testimony indicates that Elena's statements were volunteered. Spontaneous statements to acquaintances are not testimonial. We, therefore, conclude that Elena's statements to Shepard were not testimonial and that admission of these hearsay statements did not violate the Confrontation Clause.

In addition, the State proffered the testimony of Vernette Langon, a DPS trooper and neighbor of the Sains. On the morning of her death, Elena approached Langon and asked if Langon would park her patrol vehicle in front of Elena's house so that Elena could get some of her clothes out of the house. Langon, who was off-duty at the time, said that she could not use the patrol car for that purpose but would accompany Elena to her house on foot. After learning that [petitioner] was taking a concealed handgun class, however, Langon decided that it would be best to contact the Fort Worth police department, and she assisted Elena in doing so. [Petitioner]'s Confrontation Clause objections were made only to the following: Elena told Langon that she had been abused, was scared, knew her husband was not home, and went to her house to retrieve some of her belongings. The trial court overruled [petitioner]'s objection and granted him a running objection to Langon's testimony.

The statements to Langon differ from the other statements in that they were made to a law enforcement officer. Not all statements to law enforcement personnel, however, are testimonial under *Crawford*. In a later case, *Davis v. Washington,* the Supreme Court articulated the following rule:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Further, we have held that the timing, purpose, and setting of the statement may be relevant. We may also look to the degree of formality of a declarant's interaction with the police, the purpose and structure of police questioning, and the

likelihood that the declarant expected that the statements could be used in a criminal prosecution.

Here, Langon was not interviewing or interrogating Elena. Rather, Elena informally approached Langon to request immediate assistance because she believed that she was in danger. Langon stated that Elena was desperate to get back into the house while [petitioner] was not home. Generally, statements that are made to police while the declarant believes that she is in personal danger are not made with consideration of their legal ramifications because the declarant speaks out of urgency and a desire to obtain a prompt response.

For these reasons, we conclude that Elena's statements to Langon were not testimonial. Therefore, their admission did not violate [petitioner]'s rights under the Confrontation Clause.

*Sain*, slip op., 2007 WL 4462599, at *5-7 (footnotes, except 35 and 37, omitted).

Also relying on *Crawford, Davis*, and relevant state law, the state habeas court addressed these claims and entered the following relevant findings of fact and conclusions of law:

### Grounds One, Two and Three: Right to Confrontation

2. [Petitioner] asserts that new case law from the Supreme Court of the United States [in *Giles v. California*, 544 U.S. 353 (2008)[2]] requires review of his claims. Specifically, [petitioner] contends that subsequent to his direct appeal, the Supreme Court rejected the "forfeiture by wrongdoing" doctrine [as to out-of-court statements].

   a. The Supreme Court of the United States has held that the admission of a hearsay statement made by a nontestifying declarant violates the Sixth Amendment if the statement was testimonial and the defendant lacked a prior opportunity for

---

[2]The theory of "forfeiture by wrongdoing" permitted introduction of out-of-court statements by a witness that was detained or kept away by means or procurement of the defendant and applied when the defendant engaged in conduct designed to prevent the witness from testifying. *Giles v. California*, 554 U.S. 353 (2008).

9

cross-examination, even if the statement falls under a hearsay exception. Testimonial applies, at a minimum, to "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."

    b.    The Texas Court of Criminal Appeals stated that the testimonial character of a statement is determined by a reasonable, similarly situated declarant's ability to appreciate the legal ramifications of his statement.

3. In Ground One, [petitioner] claims that the Trial Court erred in allowing highly prejudicial hearsay statements of Karen LaBarre to be admitted, thus violating [petitioner]'s right to confrontation. During trial, [petitioner] objected to LaBarre's testimony regarding statements made by the victim on November 12, 14, and 15. In a hearing outside of the jury, the Trial Court sustained the objections to the November 12 and 14 statements, and LaBarre did not testify to those statements. The Court summarized the November 15 statements concerning only the victim's return to the house to get her things and reasons why the victim thought [petitioner] was not home.

    a.    This Court notes that LaBarre did not testify before the jury that the victim told her that [petitioner] was going to kill her or that [petitioner] had abused her.

    b.    [Petitioner] did not object to the testimony proffered by LaBarre. The Second Court of appeals stated that this failure to object waived [petitioner]'s right to complain. Additionally, failure to timely object waives the issue for review in a collateral attack.

    c.    Because [petitioner] failed to object to LaBarre's testimony regarding the victim's statements concerning her return to the house and the reasons she though[t] [petitioner] was not home, [petitioner] waived his right to complain . . . .

4. In Ground Two, [petitioner] claims that the Trial Court erred in allowing the highly prejudicial hearsay testimony of Valerie Shepard to be admitted. Specifically, [petitioner] contends that the victim's statements to Shepard were testimonial hearsay and their admission violated [petitioner]'s right to confrontation. Shepard, an assistant property manager who showed the

victim an apartment the day before her death, testified to statements made by the victim concerning three issues: security measures in the apartment, abuse of the victim, and the victim's fear that [petitioner] would kill her. [Petitioner] objected to Shepard's testimony regarding the victim's statements about her abuse and fear that [petitioner] would kill her; the Trial Court overruled [petitioner]'s objections.

    a.    Statements made to acquaintances are not testimonial. [*Wood v. State*, 152 S.W.3d 105, 113-14 (Tex. Crim. App. 2004.] The Second District Court of Appeals determined that the victim's statements to Shepard were not testimonial and admission of the statements did not violate the Confrontation Clause.

    b.    The Court of Criminal Appeals has repeatedly reiterated the general rule that claims raised and rejected on direct appeal cannot be relitigated in an application for habeas corpus. . . .

5.    In Ground Three, [petitioner] claims that the Trial Court erred in allowing the highly prejudicial hearsay testimony of Vernette Langon to be admitted. [Petitioner] seems to claim that the victim's statements to Langon were testimonial because Langon is a law enforcement officer and as such, admission of those statements violated [petitioner]'s right to confrontation. Langon was off-duty at the time the victim made her statements. [Petitioner] objected to Langon's testimony and the Trial Court overruled his objection.

    a.    Not all statements to law enforcement personnel are testimonial under *Crawford*. "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."

    b.    The Second District Court of Appeals determined that the victim's statements to Langon were not testimonial because Langon was not interviewing or interrogating the victim. Rather, the victim informally approached Langon to request

11

      immediate assistance because the victim believed she was in danger.

  c.  Because the victim's statements to Langon were not testimonial, the Supreme Court's holding in *Giles* [that the "theory of forfeiture by wrongdoing is not an exception to the Sixth Amendment's confrontation requirement"] does not apply and [petitioner]'s right to confrontation was not violated.

(State Habeas R. at 59-61) (citations omitted)

  The Texas Court of Criminal Appeals also rejected petitioner's claims by refusing his petition for discretionary review and denying his state habeas application on the findings of the state habeas court. Petitioner has not demonstrated that the state courts' denial of his claims is contrary to, or involves an unreasonable application of, clearly established federal law as determined by the Supreme Court or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state courts.

  As to ground one, under Texas law, a party must make a timely and proper objection to preserve a claim for appellate review. *See Turner v. State,* 805 S.W.2d 423, 431 (Tex. Crim. App.). This "contemporaneous objection" rule constitutes an adequate state procedural bar for purposes of federal habeas review. *See Styron v. Johnson,* 262 F.3d 438, 453-54 (5th Cir. 2001). Petitioner did not object to the November 15 statements to LaBarre concerning Elena's return to the house to get her things and the reasons why Elena thought appellant was not home during the hearing or at trial. (RR, vol. 3, at 63, 87-89) As a result, the state habeas court refused to consider this claim on the merits. The state's procedural-default doctrine precludes federal habeas review. *See Ylst v. Nunnemaker,* 501 U.S. 797, 801 (1991). A state prisoner can overcome a procedural default by

demonstrating cause for the default and actual prejudice resulting from the purported violation of federal law, or by demonstrating that failing to consider the claim will result in a fundamental miscarriage of justice. *See Coleman v. Thompson,* 501 U.S. 722, 749 (1991). Petitioner does not make such a showing, nor is any exception to the procedural default apparent in the record.

As to grounds two and three, petitioner argues the out-of-court statements of the victim were the only compelling evidence to support his conviction, and, without those statements, there was no evidence to support the state's case. According to petitioner, the statements attributed to the victim "are consistent with a witness establishing witnesses to be used in a future divorce trial and which certainly were being used to develop her case against [petitioner] in the civil proceeding." He asserts the statements made by the victim "denied him his right to confront and cross examine the main and really only witness against him–the deceased wife." (Pet'r Mem. at 21) Petitioner concludes by arguing, generally, that the confrontation issues raised "are clearly denials of a substantial constitutional right in light of the Supreme Court's" rulings subsequent to *Crawford* and "the Texas Courts finding to the contrary is contrary to clearly established federal law as decided by the Supreme Court. . . ." (Pet'r Mem. at 21-22)

As noted by respondent, bald assertions and conclusory allegations do not warrant habeas relief. *Ross v. Estelle,* 694 F.2d 1008, 1012 (5th Cir. 1983). Petitioner fails to cite Supreme Court precedent or present evidence establishing that the state courts' determination of the claim was contrary to or involved an incorrect application of *Crawford* and its progeny. The full reach of *Crawford*'s holding remains unclear, but the state correctly maintains that the victim's out-of-court statements to Shepard were not "testimonial" as that term is used in *Crawford*. "There is nothing in *Crawford* to suggest that 'testimonial evidence' includes spontaneous out-of-court statements

13

made outside any arguably judicial or investigatory context." *Ramirez v. Dretke,* 398 F.3d 691, 695 n.3 (5th Cir. 2005). Furthermore, petitioner cites to no Supreme Court precedent, and none is found, that a victim's unsolicited statements to an off-duty police officer out of fear for the victim's personal safety falls within the purview of *Crawford.*

Nor has petitioner demonstrated that admission of the hearsay testimony in question was so egregious as to render his trial fundamentally unfair. *Bigby v. Cockrell,* 340 F.3d 259, 271-72 (5th Cir. 2003) (citing *Dawson v. Delaware,* 503 U.S. 159 (1992) and *Estelle v. McGuire,* 502 U.S. 62 (1991)).[3] "[T]he admission of evidence may violate the Due Process Clause of the Fourteenth Amendment if the evidence is 'so unduly prejudicial that it renders the trial fundamentally unfair,'" *Woods v. Quarterman,* 503 F.3d 408, 414 (5th Cir. 2007), *cert denied,* 552 U.S. 1314 (2008) (quoting *Payne v. Tennessee,* 501 U.S. 808, 825 (1991)). Having reviewed the entire record, and assuming the jury disbelieved petitioner's defensive theories of self-defense and protection of one's property, sufficient evidence supports the conviction, even disregarding the out-of-court statements.

## 2. *External Influences*

In ground four, petitioner claims "the trial court erred by introducing a newspaper reporter to the jury panel and failing to adequately instruct the jury not to read the paper during the trial, leading to one juror reading an article about the trial while the trial was still ongoing," in violation of his right to due process and a fair trial. (Insert to Pet.) Petitioner raised this claim in his state

---

[3]To the extent petitioner claims admission of the hearsay testimony violated state evidentiary rules, the claims are not cognizable on federal habeas review. *Styron v. Johnson,* 262 F.3d 438, 454 (5th Cir. 2001).

habeas application, and the state habeas court entered the following findings of fact and, applying relevant state law, conclusions of law:

> 1. The Trial Court did identify a newspaper reporter to the jury. The Trial Court also submitted to the jury a written jury instruction directing the jury not to "look anything up about the case" or to get information "from some other place."
>
> 2. [Petitioner] presents no evidence to support his claim. In his amended application, [petitioner] claims that a juror read a newspaper article during the trial but presents no evidence of specific facts indicating such.
>
>    a. In a habeas corpus proceeding, the burden of proof is on the applicant. An applicant "must prove by a preponderance of the evidence that the error contributed to his conviction or punishment." In order to prevail, the applicant must present facts that, if true, would entitle him to the relief requested. Relief may be denied if the applicant states only conclusions and not specific facts. In addition, an applicant's sworn allegations alone are not sufficient to prove his claims.
>
>    b. Although harm to the defendant is presumed when a juror received information from an unauthorized person about the case, the defendant has the initial burden to show that a juror did in fact receive information about the case.
>
>    c. [P]etitioner] failed to prove that the trial court did not properly instruct the jury or that any juror received information from an unauthorized source . . . .

(State Habeas R. at 62) (citations omitted)

The Texas Court of Criminal Appeals also rejected this claim by denying petitioner's state habeas application without written order on the findings of the habeas court. Petitioner has failed to demonstrate that the state courts' determination of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or resulted in a decision that was based on an unreasonable determination of

15

the facts in light of the evidence presented in the state court. A jury is presumed to follow the instructions given them by the court. *United States v. Bernard*, 299 F.3d 467, 476 (5th Cir. 2002). Bald assertions and conclusory allegations to the contrary do not warrant habeas relief. *Ross*, 694 F.2d at 1012. Absent an evidentiary basis, a court cannot consider a petitioner's bald assertions to be of probative evidentiary value. *Id.* at 1011-12.

## II. RECOMMENDATION

It is recommended that this petition be denied.

## III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until January 17, 2011. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## IV. ORDER

Under 28 U.S.C. § 636, it is ordered that each party is granted until January 17, 2011, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ordered that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ordered that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED December 27, 2010.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE